UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CARLOS KENDALL DUNCAN, | Case No. 23-cv-3875 (LMP/DJF) |
| Petitioner, | |
| v. | |
| WILLIAM BOLIN, Warden, Stillwater Correctional Facility, Minnesota, | ORDER ADOPTING REPORT AND RECOMMENDATION |
| Respondent. | |

Beau D. McGraw, **McGraw Law Firm, PA, Lake Elmo, MN**, for Petitioner.

Peter R. Marker, **Ramsey County Attorney's Office, St. Paul, MN**, for Respondent.

This matter is before the Court on the January 3, 2025 Report and Recommendation ("R&R") of United States Magistrate Judge Dulce J. Foster, which recommends dismissing without prejudice Plaintiff Carlos Kendall Duncan's ("Duncan") habeas petition (ECF No. 1) brought under 28 U.S.C. § 2254. *See* ECF No. 11. Duncan objected to the R&R (ECF No. 12), so this Court reviews the conclusions in the R&R that Duncan challenges de novo. Fed. R. Civ. P. 72(b)(3). However, portions of the R&R to which Duncan does not object are reviewed only for clear error. *Braun v. Minnesota*, No. 22-cv-710 (JRT/JFD), 2022 WL 17038976, at *3 (D. Minn. Nov. 17, 2022) (citing Fed. R. Civ. P. 72(b) 1983 advisory committee note). For the following reasons, the Court overrules Duncan's objections, adopts the R&R, and dismisses Duncan's habeas petition.

## FACTUAL BACKGROUND

In August 2017, Duncan was convicted of two counts of attempted second-degree murder in Minnesota state court and sentenced to 214 and 153-month terms of imprisonment, to be served consecutively. ECF No. 1 at 1. Duncan's convictions were affirmed by the Minnesota Court of Appeals on March 4, 2019. *See State v. Duncan* ("*Duncan I*"), A17-2049, 2019 WL 1006792, at *1 (Minn. Ct. App. Mar. 4, 2019). Duncan petitioned for further review, which the Minnesota Supreme Court denied on May 28, 2019. ECF No. 1 at 3.

After his direct appeals were exhausted, Duncan filed a pro se petition for postconviction relief in Minnesota state court on October 14, 2019. ECF No. 1 at 3. During the pendency of those proceedings, one of the central trial witnesses against Duncan recanted his testimony. *See Duncan v. State* ("*Duncan II*"), A22-1487, 2023 WL 4862919, at *2 (Minn. Ct. App. Jul. 31, 2023) (noting that the witness recanted "[s]hortly before the scheduled hearing on the petition"). Duncan then retained counsel and moved to withdraw his pro se postconviction petition to allow time for his attorney to investigate the matter further and file a new petition. *See State v. Duncan*, No. 62-CR-17-132 (Minn. Dist. Ct. Aug. 26, 2020), Index #137.[1] The state court granted Duncan's motion on September 21, 2020. *Id.*, Index #138.

Duncan—this time represented by counsel—filed a petition for post-conviction relief in state court on August 9, 2021. ECF No. 1 at 4. After an extensive evidentiary

---

[1] The Court may take judicial notice of public records of a state court proceeding. *See Pins v. State Farm Fire & Cas. Co.*, 476 F.3d 581, 585 (8th Cir. 2007).

hearing, the state district court denied Duncan's petition. ECF No. 1-1 at 1–26. Duncan timely appealed to the Minnesota Court of Appeals, which affirmed the state district court's decision on July 31, 2023. *Duncan II*, 2023 WL 4862919, at *1. Duncan petitioned for further review, which the Minnesota Supreme Court denied on October 25, 2023. ECF No. 1 at 5. Duncan then brought this action on December 22, 2023. ECF No. 1. Duncan's petition raises two claims: (1) ineffective assistance of trial and appellate counsel and (2) the false testimony of the trial witness. *Id.* at 6–12.

## ANALYSIS

Time is a fickle friend—one moment it's there, the next moment it's gone. Habeas petitioners know this all too well, as they must meet stringent timeliness requirements to have their claims heard in federal court. Unfortunately for Duncan, his petition does not meet those stringent requirements (or narrow exceptions thereto) and must therefore be dismissed as time-barred.

### I.     Timeliness Requirements

Duncan seeks habeas relief under 28 U.S.C. § 2254, ECF No. 1 at 1, so the one-year limitation period in 28 U.S.C. § 2244(d) applies to his petition. Under that deadline:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or

          laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The one-year deadline is automatically tolled, however, during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The R&R recognizes, and Duncan does not dispute, that only the deadlines in 28 U.S.C. § 2244(d)(1)(A) and (d)(1)(D) are implicated by his petition. ECF No. 11 at 7. Therefore, whether Section 2244(d)(1)(A) or Section 2244(d)(1)(D) applies depends on whether Duncan would have been aware of the factual grounds for each claim when his direct appeal became final. If Duncan would have been aware of the factual grounds at that time, then the claim is governed by Section 2244(d)(1)(A); if not, then the claim is governed by Section 2244(d)(1)(D). The Court accordingly considers each of Duncan's claims, determining first whether it is governed by Section 2244(d)(1)(A) or Section 2244(d)(1)(D) and then whether the claim is timely under the relevant provision.

    a. **Ineffective Assistance of Trial and Appellate Counsel**

Duncan does not object to the R&R's conclusion that Section 2244(d)(1)(A) applies to his ineffective assistance of trial and appellate counsel claim. ECF No. 11 at 7. The Court detects no clear error with respect to the R&R's conclusion. *See Martin v. Fayram*,

4

849 F.3d 691, 696–97 (8th Cir. 2017) (denying habeas relief where petitioner was aware of the facts underlying his ineffective assistance of trial and appellate counsel claims before the conclusion of his direct appeal because those claims stemmed from conduct at trial and on appeal).

Applying Section 2244(d)(1)(A) to Duncan's petition, Duncan agrees that his petition is untimely (although he disputes the R&R's calculation of how untimely he was).[2] The Court finds no clear error in the R&R's conclusion that Duncan's ineffective assistance of trial and appellate counsel claims are untimely.

### b. False Testimony

Duncan does not object to the R&R's conclusion that Section 2244(d)(1)(D) applies to his false testimony claim. ECF No. 11 at 7–8. That conclusion is not clearly erroneous, as the trial witness recanted his testimony only after Duncan's direct appeals had been exhausted. *See Duncan II*, 2023 WL 4862919, at *2 (noting that the trial witness recanted during the pendency of Duncan's first postconviction petition in state court).

However, Duncan challenges the R&R's conclusion that the one-year deadline in Section 2244(d)(1)(D) began ticking on September 21, 2020. ECF No. 12 at 2–3. The R&R reached that conclusion by observing that the trial witness recanted while Duncan's

---

[2]   For Duncan's ineffective-assistance-of-counsel claim, the R&R concluded that 455 days had elapsed between the date of final judgment and the date that Duncan sought habeas relief. ECF No. 11 at 10. Both Duncan and Respondent agree that this calculation was erroneous, ECF No. 12 at 2, ECF No. 13 at 2, but they also agree that, properly calculated, Duncan's ineffective-assistance-of-counsel claim is still untimely. The R&R's erroneous time calculation does not, therefore, impact the ultimate outcome: Duncan's claim is untimely.

5

first postconviction petition was pending before state court between October 14, 2019, and September 21, 2020.  ECF No. 11 at 10–11 (citing *Duncan II*, 2023 WL 4862919, at *2).  By virtue of the automatic tolling in Section 2244(d)(2), the one-year deadline did not start until September 21, 2020—the date on which the state district court allowed Duncan to withdraw his first post-conviction petition.  *Id.* at 11.

Duncan asserts that the R&R uses the wrong starting point.  Although he does not dispute that he learned of the witness's recantation during the pendency of his first postconviction proceeding, Duncan argues that "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" was July 9, 2021, the date on which Duncan received an affidavit from the witness containing the recantation.  ECF No. 12 at 2.  According to Duncan, the factual predicate for his false testimony claim "should start from the date Duncan obtained admissible evidence, in the form of the signed affidavit."  *Id.*  Duncan observes that without an affidavit, he would not have been able to pursue state postconviction relief because his evidence without the affidavit would have lacked "sufficient indications of reliability."  *Id.*

Duncan's timeliness calculation is simply not the law.  The one-year deadline begins running when the "factual predicate" of the claim becomes known to the petitioner.  28 U.S.C. § 2244(d)(1)(D).  The factual predicates of claims are the "vital facts underlying those claims."  *Martin*, 849 F.3d at 696 (citation omitted).  "Knowledge of the vital facts of a claim may be distinct from knowledge of their legal significance, *or from evidence used to support the claim*."  *Id.* (citations omitted) (internal quotation marks omitted) (emphasis added).  The factual predicate analysis is thus not concerned with "whether the

6

facts are available in an admissible form or are sufficient to succeed in state or federal court." *Fenney v. Beltz*, No. 21-cv-1679 (JRT/HB), 2022 WL 748372, at *5 (D. Minn. Mar. 11, 2022) (rejecting the argument that the factual predicate of a Section 2254 claim was discovered when the petitioner received an admissible affidavit from a trial witness who changed their story).

Duncan is accordingly "confusing his knowledge of the factual predicate of his claim with [the process of] gathering evidence in support of that claim." *Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009) (citation omitted) (alteration in original). Because Duncan had knowledge of the "vital facts" about the witness's recantation prior to September 21, 2020, that is when the one-year clock began ticking. *Martin*, 849 F.3d at 696. The Court therefore agrees with the R&R's conclusion that September 21, 2020, provides the applicable starting point.

Using that date, Duncan's false testimony claim is untimely. Duncan filed his second postconviction petition in state court on August 9, 2021, which, per Section 2244(d)(1)(D), meant that the deadline period did not run from August 9, 2021, to October 25, 2023 (the date on which the Minnesota Supreme Court denied review of Duncan's second postconviction petition).[3] Then, the deadline period began to run again from October 26, 2023, to December 22, 2023 (the date on which Duncan filed the instant petition). Accordingly, the R&R concluded that the deadline period had run for a total of

---

[3]   Section 2244(d)(2) does not toll the one-year deadline period during the pendency of a petition for certiorari to the U.S. Supreme Court seeking review of a denial of state postconviction relief. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

7

380 days—more than one year. A summary of the R&R's timeliness calculation is presented in the following table:

| Time Period | Event | Deadline Period Running? |
|---|---|---|
| Before September 21, 2020 | Duncan learns of witness's recantation while his first postconviction petition is pending. | No. 28 U.S.C. § 2244(d)(2). |
| September 22, 2020 to August 9, 2021 | No postconviction petition is pending. | Yes. 322 days elapsed. |
| August 9, 2021 to October 25, 2023 | Duncan's second postconviction petition is pending. | No. 28 U.S.C. § 2244(d)(2). |
| October 26, 2023 to December 22, 2023 | No postconviction petition is pending. | Yes. 58 days elapsed. |
| December 22, 2023 | Duncan files his habeas petition. | 380 total days elapsed. |

## II. Equitable Tolling

Having concluded that all of the claims presented in Duncan's habeas petition are untimely, the Court next considers whether equitable tolling can save those untimely claims. *See Earl*, 566 F.3d at 722 (recognizing that equitable tolling can apply to the deadline in Section 2244(d)). "Equitable tolling is only appropriate if a petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.'" *Martin*, 849 F.3d at 698 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

The R&R did not address whether Duncan had been pursuing his rights diligently because it concluded that the only excuse Duncan offered—the COVID-19 pandemic—was not an "extraordinary circumstance[] [that] stood in his way." *Id.* Duncan challenges that conclusion, ECF No. 12 at 5–6, but the Court agrees with the R&R.

### a. Extraordinary Circumstances from the COVID-19 Pandemic

Federal courts have routinely held that "the fact that COVID-19 prevented some prisoners from seeking habeas relief on time despite their best efforts does not mean that COVID-19 is an all-purpose, get-out-of-untimeliness-free card." *White v. Stenseth*, No. 24-cv-261 (PAM/JFD), 2024 WL 4682656, at *6 (D. Minn. Aug. 30, 2024); *United States v. Sayonkon*, No. 21-cv-2534 (ADM), 2022 WL 607474, at *3 (D. Minn. Mar. 1, 2022) (collecting cases holding that "lockdown measures imposed during COVID-19 do not automatically justify equitable tolling"). Rather, to demonstrate "extraordinary circumstances" arising from the COVID-19 pandemic, the petitioner "must establish how, specifically, the pandemic prevented him from prosecuting his claims." *White*, 2024 WL 4682656, at *6 (citing *Holland*, 560 U.S. at 650); *see Valles v. Allison*, 21-cv-819-GPC-WVG, 2022 WL 3327386, at *4–5 (S.D. Cal. Aug. 11, 2022) (citation omitted) (explaining that a habeas petitioner must set forth "fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition").

Duncan falls far short of showing how the pandemic specifically hindered him from filing a timely habeas petition. Duncan states that the pandemic hindered him from meeting in-person with his attorney, ECF No. 9 at 16, but he does not "explain how this prevented him from filing his habeas petition," *Vanderpool v. Zmuda*, No. 20-3184-SAC, 2021 WL 1564600, at *3 (D. Kan. Apr. 21, 2021). And, as Duncan concedes, he was able to communicate with his attorney by telephone. ECF No. 9 at 16. Duncan also states that "he believes that that his legal team has been unable to meet with witnesses because of the pandemic." *Id.* Notwithstanding the vagueness of this allegation, again, Duncan does not

9

explain how the inability of his legal team to meet with witnesses "prevented him from prosecuting his claims." *White*, 2024 WL 4682656, at *6.

At base, Duncan's arguments for equitable tolling "would apply to *any* habeas petitioner following the onset of the pandemic." *Id.* at *7. But equitable tolling "may be invoked only in limited circumstances," not as a matter of course. *Baker v. Norris*, 321 F.3d 769, 771 (8th Cir. 2003); *see also United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."). Duncan simply does not demonstrate his entitlement to equitable tolling.

### III.   Actual Innocence

Duncan finally argues that his untimely habeas petition is excused by his actual innocence. The Court notes that although a heading of Duncan's objections states that he is objecting to the R&R's conclusion on this point, the body of his objection contains no analysis regarding actual innocence. ECF No. 12 at 6–7. Although the Court should analyze the R&R's unobjected-to conclusion under the clear-error standard, *Braun*, 2022 WL 17038976, at *3, the Court will review the issue de novo, since the Court's conclusion is the same under either standard.

If proven, a claim of actual innocence overrides the one-year deadline in Section 2244(d). *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But actual innocence is a "demanding" standard, requiring the petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (citation

omitted). An actual innocence claim must be supported by new evidence that convinces the Court it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This "new" evidence must be "evidence which was not available at trial through the exercise of due diligence." *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011).

Duncan points to three pieces of evidence that purportedly demonstrate his actual innocence: (1) the trial witness's recantation, (2) testimony at the postconviction proceeding by Duncan's romantic partner that she was with him during the time of the crime, and (3) testimony by the owner of the vehicle allegedly involved in the crime that Duncan did not have access to the vehicle at the time of the crime. ECF No. 9 at 23–27.

As the R&R appropriately recognized, the last two pieces of evidence are not "new"; Duncan offers no justification why this routine alibi evidence "was not available at trial through the exercise of due diligence." *Kidd*, 651 F.3d at 953; *see Atkins v. Pringle*, No. 3:22-cv-110, 2023 WL 11996936, at *19 (D.N.D. Mar. 14, 2023) (rejecting "anticipated testimony that would support an alibi defense" as "new" evidence because "it was available before [the petitioner] pleaded guilty"), *report and recommendation adopted*, 2023 WL 11996933 (D.N.D. May 2, 2023).

As for the trial witness's recanted testimony, this evidence falls well short of evidence that would make it "more likely than not that no reasonable juror would have convicted" Duncan. *McQuiggin*, 569 U.S. at 399. Indeed, the state district court judge who considered the witness's recantation during the lengthy postconviction proceedings found the witness's recantation not credible, observing that, during an evidentiary hearing

11

on Duncan's postconviction petition, the witness "contradicted himself, seemed confused, and failed to provide an understandable and credible reason for his allegedly false testimony." ECF No. 1-1 at 16. This weak recantation evidence, if presented at trial, "would have established, at most, conflicting testimony," and thus "a reasonable juror considering all the evidence, old and new, could still convict [Duncan]." *Feather v. United States*, 18 F.4th 982, 987 (8th Cir. 2021) (holding actual-innocence standard was not met by non-credible affidavits of recanting victims and noting that "motions for new trial based on recantations are viewed with disfavor").[4]

In sum, Duncan has presented no valid excuse for his untimely habeas petition, so the petition must be dismissed. *See* 28 U.S.C § 2244(d).

## IV.  Certificate of Appealability

Duncan requests that the Court issue a certificate of appealability if his petition is dismissed. ECF No. 12 at 7–8. A petitioner seeking habeas relief pursuant to Section 2254 may not appeal an adverse ruling on his petition unless he is granted a certificate of

---

[4] Even if the Court considered the merits of Duncan's recantation argument, it would still deny habeas relief. Duncan's argument hinges on the credibility of the recanting witness. *See* ECF No. 9 at 43–44 (discussing the recanting witness's credibility). But, as noted, the state district court judge who saw and heard the witness describe his recantation during an evidentiary hearing on Duncan's postconviction petition found that the witness's recantation was not credible. ECF No. 1-1 at 16. The Minnesota Court of Appeals affirmed that determination, holding that Duncan could not demonstrate that "the testimony in question was false" given the witness's lack of credibility. *See Duncan II*, 2023 WL 4862919, at *6–7. Federal habeas review "gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir. 2004) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The Court must necessarily conclude, then, that the recantation is not credible and cannot provide a basis for habeas relief under Section 2254.

appealability. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a court dismisses a habeas petition on procedural grounds, the petition must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Duncan's petition is clearly time-barred, and Duncan has failed to offer any debatable basis on which that untimeliness could be excused. Accordingly, no certificate of appealability shall issue.

## ORDER

Based upon all the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1. Duncan's objections (ECF No. 12) are **OVERRULED**.
2. The Report and Recommendation (ECF No. 11) is **ADOPTED**.
3. The Petition (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.
4. A Certificate of Appealability **SHALL NOT ISSUE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 17, 2025

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge